UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | CASE NO.: 25-11263-pb |
| | CHAPTER: 13 |
| Lissette Soto-Domenech, | |
| | HON. JUDGE: Hon. Philip Bentley |
| Debtor. | |
| | HEARING DATE: December 18, 2025 at 10:00 a.m |

**MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY, OR, ALTERNATIVELY, MOTION TO DISMISS WITH PREJUDICE**

I, Katherine Heidbrink, Esq., an attorney at law admitted to practice before the Courts of the State of New York and the U.S. Bankruptcy Court for the Southern District of New York, hereby certify the following to be true and correct under penalty of perjury:

Rushmore Servicing as servicer for U.S. Bank Trust, National Association as trustee for LB-Treehouse Series VI Trust (together with any successor or assign, "Movant") hereby moves this Court for an Order: pursuant to 11 U.S.C. § 362(d)(4), for in rem relief from the automatic stay with respect to the property commonly known as 5730 Mosholu Avenue, Unit 6B, Bronx, NY 10471 aka 5730 Mosholu Avenue # 6B, Bronx, NY 10471 (the "Property"); pursuant to 11 U.S.C. § 362 (d)(1) and (d)(2); vacating the automatic stay to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor`s premises; or, alternatively, pursuant to 11 U.S.C. §§ 105(a), 521, 1307(c), 1322 and 1325, dismissing the Chapter 13 case of Lissette Soto-Domenech ("Debtor")

with a bar on re-filing bankruptcy under any chapter for two (2) years; granting waiver of the 14 day stay in effect pursuant to F.R.B.P. 4001(c)(4); granting Movant reasonable attorney fees and costs; and granting Movant such other and further relief as is just and proper. In support of this Motion, Movant respectfully states:

## I. BACKGROUND

1. Movant is a secured creditor of the Debtor pursuant to an Adjustable Rate Note executed by Lissette Soto Domenech (the "Debtor") on May 27, 2003, whereby the Debtor promised to repay $62,400.00 plus interest to Washington Mutual Bank, NA (the "Note"). To secure the repayment of the Note, Debtor Lissette Soto Domenech granted a Security Agreement and UCC-1 secured by the Property (Note, Security Agreement, UCC-1, Proprietary Lease, and Stock Certificate, collectively, the "Loan") in favor of Washington Mutual Bank, NA. Said UCC-1 was recorded on May 16, 2003, in the Office of the City Register of the City of New York in CRFN 2003000132002, encumbering the Property. The Loan was ultimately assigned to Movant by a UCC-3 recorded on July 10, 2025 (the "Assignment"). Copies of the Note, Security Agreement, UCC-1, Proprietary Lease, Stock Certificate, and Assignments are attached hereto as **Exhibit A**.

2. No post-petition mortgage payments have been made in this Ch. 13 case. Movant's Loan remains pre-petition due for July 1, 2022.

3. For the convenience of the Court and all parties, below is a chart listing the multiple bankruptcy filings affecting the Property[1]:

| Debtor Name | Case Number | Foreclosure Status | Date Bankruptcy Filed | Case Dismissal Date and Reason |
|---|---|---|---|---|

[1] The Debtor also has a prior S.D.N.Y. Ch. 7 bankruptcy case, Case No. 92-45677, which is not relevant to the default of the co-op Loan on the Property.

| | | | | |
|---|---|---|---|---|
| Lissette Soto-Domeneche | 23-43167-ess (E.D.N.Y. Ch. 7) (the "First Case") | Delayed commencement of non-judicial co-op foreclosure | 09/01/2023 | 11/27/2023; dismissed on the Court's Order to Show Cause for failure to file the creditor matrix |
| Lissette Soto-Domenech | 24-10569-pb (S.D.N.Y. Ch. 13) (the "Second Case") | Delayed commencement of non-judicial co-op foreclosure | 04/02/2024 | 09/23/2024; dismissed on Trustee's motion for failure to make plan payments, *inter alia* |
| Lissette Soto-Domenech | 25-11263-pb (S.D.N.Y. Ch. 13) (the "Third Case") | Delayed commencement of non-judicial co-op foreclosure | 06/04/2025 | Active case |

4. As the above chart shows, since the 2022 default on the Loan, three bankruptcy cases have been filed for the purpose of foreclosure delay.

5. There have been a total of three recent bankruptcies since the default on the Loan. These repeat filings by the same parties, when coupled with the repeating dismissals, give rise to the inference that the repeat filings are a scheme to hinder, delay, or defraud Movant in exercising its state law rights. Accordingly, Movant now seeks an Order pursuant to 11 U.S.C. § 362(d)(4), vacating the automatic stay and granting in rem relief from stay with respect to the Property. Copies of the PACER dockets are annexed hereto as **Exhibit B.**

6. In the third and instant case, the Debtor's Schedule I shows that the Debtor's gross monthly household income is $3,345.00. Since this figure does not include any income tax payments, this is also the net monthly household income. The Debtor's Schedule J provides for $2,061.00 per month in non-mortgage expenses, leaving $1,284.00 per month available to pay all regular and arrears mortgage payments.

7. As of the petition date, as set forth in Claim No. 8-1, the total debt on the Loan

was approximately $149,317.85, with pre-petition arrears of approximately $125,667.28. The Loan is accruing interest at a variable rate of 7.097%. The total monthly post-petition mortgage payment, which is not escrowed, is $315.68.

8. According to the Debtor's Schedule A/B, there is an additional mortgage loan in favor of Select Portfolio Servicing, Inc. ("SPS"), secured by the property commonly known as 5730 Mosholu Avenue, Unit 6A, Bronx, NY 10471. Both units, including the Property, are listed as the Debtor's primary residence on the petition.

9. While SPS has not filed a claim, the Debtor's proposed Ch. 13 plan provides for a direct post-petition mortgage payment of $435.00 per month on the SPS loan, with $4,729.17 in arrears on the SPS loan to be repaid through the plan.

10. Movant has advanced a total of $12,099.70 in post-petition co-op maintenance fees on the Property, and is preparing a Post Petition Fee Notice regarding same.

**II. GROUNDS FOR IN REM RELIEF**

11. Pursuant to 11 U.S.C. § 362(d)(4), courts are empowered to grant in rem relief from a stay affecting a creditor's property, such that any and all future filings by any party with a claimed interest in the property will not operate as an automatic stay for a period of two years. *See, e.g., In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010); *In re Blair*, 2009 WL 5203738, *4 (Bankr. E.D.N.Y. 2009); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009).

12. Because the stay attaches to the property, rather than to the filing parties, "in rem relief is a particularly effective method to combat tag-team serial filers who seek to prevent foreclosures." *In re Selinsky*, 365 B.R. 260, 264 (Bankr. S.D.Fla. 2007); *see In re Roeben*, 294 B.R. 840, 846 (Bankr. E.D.Ark. 2003); *In re Graham*, 1998 WL 473051, *2 (Bankr. E.D.Penn. 1998).

13. To obtain in rem relief, a creditor must provide evidence that: (i) a debtor or a group of debtors has made prior bankruptcy filings as part of a scheme; (ii) the object of which was to delay, hinder, or defraud creditors; and (iii) which involves either the transfer of some interest in the real property without the secured creditor's consent or court approval or multiple bankruptcy filings affecting the property. *See In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 870-71 (7th Cir. BAP 2012). Further, it is well-settled that the mere timing and filing of multiple prior bankruptcy cases by related debtors permits the inference of a scheme to hinder, delay, and defraud a creditor. *See, e.g., Blair*, 2009 WL 5203738 at *4, *citing Montalvo*, 416 B.R. at 38.

14. Analyzing a similar set of circumstances, the Court in *Blair* (*id.* at *4-5) granted in rem relief and found that:

> Here, Debtors have neither filed nor confirmed a chapter 13 plan. None of their chapter 13 cases were prosecuted to any meaningful extent. The timing and sequence of the filings is also significant. Each was filed on the eve of or shortly before significant events affecting the Property. The uncontroverted record of the filings and lack of any good faith prosecution of each of Debtors' prior cases allows this Court to draw a permissible inference and find that the instant petitions were part of a scheme of Debtor to hinder, delay, and defraud [creditor] BAC.
>
> Therefore, this Court will enter an Order such that any future bankruptcy filings by either of the Debtors, or any other person having an interest in the Property, will not operate as a stay of any action against the Property for a period of two years after the date of the entry of the orders hereon.

15. Furthermore, the Court may draw an inference of foreclosure delay from timing and existence of multiple filings alone, without analyzing the debtors' conduct during the cases. The "conduct of the debtor while in bankruptcy is less relevant than the actual timing and existence of multiple filings. The existence of multiple filings on the eve of foreclosure alone…is sufficient to establish a presumption of a scheme to hinder or delay the creditor, subject to the

debtor`s right to challenge this presumption." *In re Merlo*, 646 B.R. 389, 395 (Bankr. E.D.N.Y. 2022).

16. In this case, the frequent and largely unprosecuted filings demonstrate a clear pattern of delay designed to frustrate resolution of the underlying foreclosure. The instant petition is nothing more than a stall tactic to delay, hinder, and frustrate Movant in exercising its foreclosure rights.

## III. ADDITIONAL BACKGROUND AND GROUNDS FOR STAY RELIEF

17. Additionally, the account remains contractually due for the July 1, 2022 payment and post-petition due for the July 1, 2025 payment, and for each subsequent payment thereafter. Therefore, relief from stay is also warranted for cause pursuant to 11 U.S.C. § 362(d)(1). A copy of the SDNY worksheet is attached as **Exhibit C**.

18. The Debtor has failed to make current mortgage payments due under the terms of the Loan. As a result, the Loan remains post-petition due for July 1, 2025, and each subsequent payment thereafter.

19. Pursuant to 11 U.S.C. § 362(d)(1), the court shall enter an order granting a secured creditor relief from the automatic stay for cause "including the lack of adequate protection of an interest in property of such party and interest."

20. Specifically, courts have found cause for the granting of relief from an automatic stay where the debtor has failed to make post-petition mortgage payments as they become due. *In Re Taylor*, 151 B.R. 646, 648 (Bankr. E.D.N.Y. 1993).

21. Further cause to grant stay relief exists because Movant has advanced a total of $12,099.70 in co-op maintenance fees on the Property.

22. Relief pursuant to 11 U.S.C. § 362(d)(2) is also appropriate due to the lack of

equity in the Property. The Debtor's outstanding amount of the obligations to Movant, less any partial payments or suspense balance, is approximately $164,053.93 as of September 8, 2025.

23. According to the Debtor's Schedule A/B, the Property has a value of $145,000.00. Thus, by the Debtor's own admission, there is no equity remaining in the Property, and it is not necessary for effective reorganization of the Debtor. A copy of the Debtor's Schedule A/B is annexed hereto as **Exhibit D.**

## IV. GROUNDS FOR ALTERNATIVE RELIEF OF DISMISSAL WITH PREJUDICE

24. Movant recognizes this Court's position regarding the high standard for in rem relief. Given same, as alternative relief, the flagrant abuse of the bankruptcy process necessitates dismissal of this case with a bar to refiling.

25. As alternative relief, Movant respectfully requests an Order: pursuant to 11 U.S.C. §§ 105(a), 521, 1307(c), 1322 and 1325, dismissing the Chapter 13 case of Debtor with a bar on re-filing bankruptcy under any chapter for two (2) years.

26. This Court has authority to fashion an appropriate Order under 11 U.S.C. § 105(a), which provides:

> *The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.*

27. Dismissal with prejudice is warranted due to the Debtor's history of meritless repeat filing of Chapter 13 cases.

### A. Dismissal with prejudice is warranted due to the Debtor's history of meritless repeat filing of Chapter 13 cases.

*1. Cause to Dismiss is Demonstrated under 11 U.S.C. § 1307*

**28.** Under § 1307(c) of the Code, the bankruptcy court is vested with the discretion to convert or dismiss a Chapter 13 case for cause. 11 U.S.C. § 1307(c). *See In re Plagakis*, Case No. 03 CV 0728 (SJ), 2004 U.S. Dist. LEXIS 2458, at *12-13 (E.D.N.Y. Jan. 27, 2004); *In re Meltzer*, Case No. 19-21110-PRW, 2020 Bankr. LEXIS 80, at *7 (Bankr. W.D.N.Y. Jan. 10, 2020); *In re Tornheim*, 181 B.R. at 169. If cause is found, and if the Court decides to exercise its discretion, the Court must determine which remedy—conversion to Chapter 7 or outright dismissal—is in the best interests of creditors and the estate. 11 U.S.C. § 1307(c). *See In re Meltzer*, 2020 Bankr. LEXIS 80, at *7; *In re Tornheim*, 181 B.R. at 169 ("The court may consider whether the debtor has willfully failed to abide by orders of the court or appear before the court to prosecute her case, whether she has caused unreasonable or prejudicial delay or is unable to effectuate a plan and whether she has filed and conducted her case in good faith. Bad faith depends on the facts and circumstances of the case and may include filing to frustrate the legitimate rights of the Movants as well as the failure to file a plan timely, to reveal changes in financial condition or to make post-petition mortgage payments" (citations omitted)). Here, cause exists to convert or dismiss this Chapter 13 case.

*2. Cause to Dismiss exists under 11 U.S.C. § 1307(c)(1). Creditors have been prejudiced by the Debtor's Inability to Propose a Feasible Plan.*

29. Pursuant to Section 1307(c) of the Bankruptcy Code, a court may dismiss a Chapter 13 case for cause, including where there is "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c). While Section 1307(c) identifies several circumstances warranting dismissal, that list is not exhaustive.

30. The Court may find unreasonable delay in a debtor's failure to file necessary modifications of a plan or in obtaining necessary acceptances from the holders of allowed secured claims. *See, e.g., De la Salle v. U.S. Bank, N.A.* (*In re De la Salle*), 461 B.R. 593 (B.A.P. 9th Cir. 2011); 11 U.S.C. § 1325(a)(5). Where a further delay by the debtor "would only prejudice creditors and [make] the feasibility of any plan unlikely" conversion or dismissal is proper. *Howard*, 284 F.3d at 323 (citing *In re Gonzalez*, 99 B.R. 188, 191 (Bankr. D.P.R. 1989)).

31. A debtor who seeks the protections of the Bankruptcy Code "'has the responsibility to inform herself of her duties' under the Code." *Rivera v. JP Morgan Chase*, No. 20-CV-5436 (JMA), 2021 U.S. Dist. LEXIS 95081, at *9 (E.D.N.Y. May 19, 2021) (quoting *In re Ward*, 423 B.R. 22, 34 (Bankr. E.D.N.Y. 2010)); *Taal v. St. Mary's Bank*, No. 13-CV-194-PB, 2014 WL130980, at *3 (D.N.H. Jan. 10, 2014) ("Chapter 13 allows a debtor many benefits over other bankruptcy proceedings, but '[t]o obtain these benefits, Chapter 13 debtors are required to act swiftly.'") (quoting *Howard*, 284 F.3d at 321 n. 1).

32. In the third and instant case, the Debtor's Schedule I shows that the Debtor's gross monthly household income is $3,345.00. Since this figure does not include any income tax payments, this is also the net monthly household income. The Debtor's Schedule J provides for $2,061.00 per month in non-mortgage expenses, leaving $1,284.00 per month available to pay all regular and arrears mortgage payments.

33. As of the petition date, as set forth in Claim No. 8-1, the total debt on the Loan was approximately $149,317.85, with pre-petition arrears of approximately $125,667.28. The Loan is accruing interest at a variable rate of 7.097%. The total monthly post-petition mortgage payment, which is not escrowed, is $315.68.

34. According to the Debtor's Schedule A/B, there is an additional mortgage loan in

favor of SPS. While SPS has not filed a claim, the Debtor's proposed Ch. 13 plan provides for a direct post-petition mortgage payment of $435.00 per month on the SPS loan, with $4,729.17 in arrears on the SPS loan to be repaid through the plan.

35. The following secured amounts must be paid in full for any proposed plan to be feasible:

| *Payee* | *Amount* | *Monthly Payment Required* | *Reference* |
|---|---|---|---|
| New York State Department of Taxation & Finance | $2,168.92 | $36.15 (through plan) | Claim No. 1-1 (secured) |
| Movant – Arrears on Loan | $125,667.28 | $2,094.45 (through plan) | Claim No. 8-1 |
| Movant – Monthly Post-Petition Payment | $315.68 | $315.68 | Claim No. 8-1 |
| SPS – Arrears on Loan | $4,729.17 | $78.82 (through plan) | Proposed plan |
| SPS - Monthly Post-Petition Payment | $435.00 | $435.00 | Proposed plan |
| **TOTAL** | **$133,316.05** | **$2,960.10** | **-** |

36. As indicated, the Debtor has $1,284.00 per month in disposable income available to pay toward a plan and toward direct payments on mortgages. Since the secured claims alone require $2,960.10 in monthly payments, the minimum payments needed would result in a net monthly loss of ($1,676.10). Additionally, this net monthly loss does not include any trustee commission, real estate tax or insurance payments (including amounts already advanced), priority claims, or payments to unsecured creditors, rendering the plan even less affordable.

37. While the Debtor has requested loss mitigation with Movant, the required request for same has not yet been filed as of October 16, 2025. Even if a loss mitigation order is entered, loss mitigation is inherently uncertain and unlikely to result in a modification if the Debtor retains both units.

38. In a best case scenario[2], if Secured Creditor were to reamortize all arrears, then to fix the interest-bearing principal balance at the Debtor's valuation of $145,000.00, with the remaining balance deferred as non-interest-bearing deferred principal due at maturity (i.e., a balloon payment), then to reamortize the Loan over 480 months and to decrease the interest rate to a below-market rate of 6.00% fixed[3], a monthly principal & interest payment of $797.81 would result. When this figure replaces the arrears payments and post-petition payments to Movant in para. 35, above, a total of $1,347.78 per month is required to pay secured creditors, which exceeds the $1,284.00 per month available to the Debtor. As such, even a best case modification of the Loan would result in a net monthly loss of ($63.78), which is not affordable. Additionally, this net monthly loss does not include any trustee commission, real estate tax or insurance payments (including amounts already advanced), priority claims, or payments to unsecured creditors, rendering the plan even less affordable.

39. Since the Debtor has failed to propose a feasible plan, and, in fact, cannot propose a feasible plan, creditors are severely prejudiced by continuation of this case.

40. Additionally, the Ch. 13 Trustee has already filed a motion to dismiss the instant Ch. 13 case.

41. Furthermore, the Debtor's history of filing three bad faith bankruptcies, the first two of which were all dismissed, indicates that the Debtor has filed the instant case for the evident purpose of foreclosure delay and not out of any attempt to reorganize.

42. Under § 1307(c)(1), by failing to propose a feasible plan, the Debtor intentionally and unreasonably delayed in prosecuting this case, in furtherance of the foreclosure delay

---

[2] Nothing in this paragraph constitutes a loan modification offer, or references any available modification from Secured Creditor. The figures in this paragraph are for illustrative purposes only.
[3] For the week of October 9, 2025, the average Freddie Mac Primary Mortgage Market Survey rate was 6.3%. *See https://www.freddiemac.com/pmms.*

schemes. The delay is solely attributable to the Debtor, and that delay is prejudicial to creditors, and particularly, the Movant. Movant continues to advance and pay taxes and a lender force placed insurance policy to protect its interests in the Property. No reorganization of the Debtor's financial affairs appears to be taking place or even possible.

43. Accordingly, Debtor's delay and bad faith filing is prejudicial to the Movant and this case should be dismissed under Bankruptcy Code § 1307(c)(1).

*3. Cause to Dismiss under Bankruptcy Code § 1307(c)(5) Because Debtor has not Proposed a Feasible Plan*

44. As set forth above, the Debtor has not proposed a feasible plan to cure Movant's arrears. The Plan is unconfirmable as it does not address the universe of claims and actions filed. Subsection (c)(5) allows a court to dismiss a case where the plan is not confirmable and references Bankruptcy Code § 1325(a)(6), "[b]y far the most important criterion for the confirmation of a chapter 13 plan." 9 COLLIER ON BANKRUPTCY ¶ 1325.07. Section 1325(a)(6) requires that the court determine whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Debtors have the burden to prove that their plans are feasible. *See Tillman v. Lombard*, 156 B.R. 156, 158 (Bankr. E.D. Va. 1993).

45. Further, Section 1325(a)(3) of the Bankruptcy Code states that "the court shall confirm a plan if – (3) the plan has been proposed in good faith and not by any means forbidden by law." The infeasible plan is clear evidence of bad faith and proof that the Debtor is simply looking to further delay foreclosure of the Property. In determining whether a chapter 13 plan has been proposed in good faith, the inquiry is governed by a "totality of the circumstances" test. *In re Ochs*, 283 B.R. 135, 137 (Bankr. E.D.N.Y. 2002). *Inter alia,* factors to consider include "the accuracy of the bankruptcy papers," "the debtor's motivation and sincerity of Chapter 13

filing," and the "general tests of 'fundamental fairness', 'totality of circumstances' and 'honesty of intention.'" *Id., internal citations omitted.* The Movant respectfully submits that the circumstances here show the Debtor's bad faith.

46. "A definite declaration as to the source and the amount of funds necessary to enable the debtor to make the plan payments is required." *In re Wagner*, 259 B.R. 694, 700 (B.A.P. 8th Cir. 2001) (citation omitted)*; see also In re Schenk*, 67 B.R. 137 (Bankr. D. Mont. 1986) (plan not feasible where debtor failed to explain how he would obtain the funds necessary to pay the later lump sum due on his proposed plan). Here, Debtor's Plan is obviously infeasible because the making of Movant's post-petition mortgage payment alone would result in an infeasible and unaffordable plan.

47. As such, Debtor cannot propose any feasible plan, so the nonexistent plan is patently unconfirmable and this case should be dismissed.

*4. Debtor's Case Should Be Dismissed as Bad Faith Filing Pursuant to 11 U.S.C. § 1307 and the Court Should Impose a Two (2) year bar on Re-Filing*

48. Although 11 U.S.C. § 1307(c) does not expressly equate bad faith with "cause," the bankruptcy court can also dismiss the petition . . . under § 1307(c) if the debtor files his petition in bad faith." *In re Eatman*, 182 B.R. at 392 (citations omitted); *see also Plagakis v. Gelberg* (*In re Plagakis*), 2004 U.S. Dist. LEXIS 2458 at *12 (E.D.N.Y. Jan. 27, 2004) (bad faith filing constitutes "cause" for dismissal). Determination of bad faith is a "highly factual determination" that may also "sweep broadly." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir. 1997). Courts have looked to a variety of factors when considering bad faith. Those factors include: whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation,

how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code. *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995).

49. This case must be dismissed with prejudice since the Debtor is deliberately causing additional undue delay to creditors.

50. Furthermore, as indicated, the Debtor has not filed a feasible plan proposed in good faith.

51. This delay highlights that the Debtor's estate is not serious about reorganization and instead filed this case for the purposes of continuing to frustrate the Movant and other creditors' state law rights.

52. Section 109(g) provides that a debtor is unable to file a bankruptcy case for 180 days if "[a prior] case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case" or if "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay . . . ." 11 U.S.C. § 109(g)(1)–(2). Whether to dismiss a case with prejudice is committed to the sound discretion of the court. *See generally In re Casse*, 198 F.3d at 336; *In re Ventura*, 375 B.R. 103 (Bankr. E.D.N.Y. 2007). Under Section 349, when there are multiple filings, each of which lacks good faith, there is cause to dismiss with prejudice. *See In re Velez,* 23-70261 (AST) (Bankr. E.D.N.Y. Apr. 10, 2023) (collecting cases).

53. As this Court has noted, dismissal of a bankruptcy "does not, by itself, bar the debtor from filing again or limit the debtor's rights in a future bankruptcy. *In re Corben*, 667 B.R. 791, 795 (Bankr. S.D.N.Y. 2025). However, the Second Circuit has also held that bankruptcy courts may prohibit debtors from filing petitions for periods of time in excess of 180 days. *In re Casse,* 198 F.3d 327, 339 (2d Cir. 1999); *see also Corben* at 796.

54. Here, a bar to refiling under any bankruptcy chapter for a period of two (2) years is appropriate due to the flagrant bad faith filing.

55. The Debtor is abusing the purpose and spirit of the Bankruptcy Code with no hope of reorganization, and that is fundamentally unfair to creditors and other interested parties. On these grounds, the Court must conclude that the current case lacks a legitimate purpose, and the Movant respectfully requests the entry of an order which will bar the Debtor from re-filing under chapter 13 of the Bankruptcy Code for a period of two (2) years from the entry of an order granting this Motion.

56. "Bad faith has both an objective and subjective element; the proponent of bad faith must show 'both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code.'" *In re Eatman*, 182 B.R. at 392, quoting *In re Love*, 957 F. 2d 1350, 1357 (7th Cir. 1992).

57. Courts have routinely held that dishonesty of a debtor is an indication of bad faith conduct and warrants dismissal. *In re Powers*, 135 B.R. 980, 992 (Bankr. C.D. Cal. 1991) (noting "lack of an honest and genuine desire to use the statutory process to effect a plan of reorganization" is an indicia of bad faith). The instant case smacks of dishonesty as Debtor's estate has shown no honest attempt to reorganize her debts, or at a minimum take the perfunctory steps to propose a feasible plan. The Movant respectfully submits that the factors above are satisfied in this case and Debtor's case should be dismissed for bad faith, with a two (2) year bar to refiling under any chapter of the Bankruptcy Code.

58. Movant acknowledge that this Court has previously provided more narrowly tailored remedy than dismissal with a bar to re-filing – to wit, a provision at the automatic stay will

not apply for a particular debtor for a period due to bad faith conduct. *Corben* at 800. In that case, this Court held: "By making the stay no longer automatic, this approach takes away tool # 1 in the serial filer's arsenal. At the same time, the bankruptcy court in any new case will retain complete flexibility to respond to the needs of the Debtor and her creditors as they arise, including by reimposing the stay if that turns out to be warranted." *Id.* Should this Court prefer this relief in this case, Movant is not opposed to a similar prohibition on the automatic stay in future cases.

## V. ANCILLIARY RELIEF

59. Fed. R. Bank. Pro. 4001(a)(4) provides that "any order granting movant relief from an automatic stay is stayed until the expiration of 14 days after the entry of the order unless the court orders otherwise.

60. In light of the history of filings and the negative impact on Movant's lawful right to sell the Mortgaged Premises pursuant to the Final Judgment (*see* Exhibit B), no legitimate purpose could be served by staying the requested relief any longer. The debtor clearly has no intention of participating in the bankruptcy process and therefore should not reap its benefits. Therefore, Movant is entitled to a waiver of the stay provision of Fed. R. Bankr. Pro. 4001(a)(4).

61. Movant respectfully requests $1,850.00 in reasonable attorney fees and $199.00 in filing costs associated with the preparation and filing of this Motion.

**WHEREFORE**, it is respectfully submitted that this Court should grant Movant's Motion for In Rem Relief in all respects, along with such other and further relief as is deemed to be just,

proper, and equitable.

Dated: Garden City, New York October 22, 2025

By: /s/ Katherine Heidbrink
Katherine Heidbrink, Esq.
FRIEDMAN VARTOLO LLP
Attorneys for Movant
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150